**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| TRACEY PATTERSON, | : | Bankruptcy No. 04-32201DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

      Before the Court is the Motion of LJR Investments, LLC of Bucks County ("LJR") for Relief from the Automatic Stay (the "Motion") seeking to exercise its state law remedies in connection with three Philadelphia investment properties owned by the Debtor on which LJR asserts a mortgage lien: 1241 Myrtlewood Street; 2914 W. Thompson Street; and 3029 Baltz Street (together the "Properties"). In defense, Debtor admits that he has made no payments to LJR but contends that he has no obligation to do so because it does not hold a mortgage on the Properties. For the reasons below, while I conclude that LJR does hold a valid lien on the Properties, I will not lift the stay at this time so long as Debtor makes adequate protection payments to LJR pending further proceedings in this Court.

**BACKGROUND**

The Properties are three of thirty-three properties ("Total Properties") that were owned by Stephen V. Aurello and Robert G. LaPlante ("Prior Owner"). Purchase money financing for acquisition of the Total Properties was provided to Prior Owner by Robert H. Glazier ("Glazier) pursuant to a note (the "Note") dated April 9, 1986 in the principal amount of $420,000.[1] Exhibit C-2. The Note was secured by a mortgage (the " Blanket Mortgage") on the Total Properties.

In or around December 1998 Prior Owner sold ten of the Total Properties, including the Properties to Debtor. He also sold six of the other Total Properties to Debtor's brother Mason Patterson ("Mason"). It is not disputed that these sales were subject to the Blanket Mortgage.

On April 2, 2005 Glazier assigned the Blanket Mortgage to LJR in consideration of the payment to him of $14,500. Exhibit C-3. The Assignment of Mortgage (the "Assignment") was properly recorded on April 14, 2005. Exhibits C-3, C-4, C-8, C-9, C-10. LJR's representative Joe O'Hara acknowledged that Glazier had released some of the Total Properties from the Blanker Mortgage but not all of them. He further testified that the Properties were not among the Total Properties for which release of liens were recorded. LJR's practice was and is to pursue its lien rights to those of the Total Properties for which no release of mortgage exists and to seek to negotiate a buyout of the property from

---

[1] The Note provided for 240 equal monthly payments of $4,193.20 commencing July 1, 1986. The Note matured on June 30, 2006. Id.

the owner. A September 2005 negotiation with Debtor toward this end for the Baltz Street property, upon notice of intended foreclosure, was not successful.[2] Exhibit D-4.

While the amount that is presently due under the Note was not established,[3] O'Hara testified that LJR received $70,000 in one year and $26,000 in another since the Assignment. Which owners made the payments was not identified. Given the nature of the Blanket Mortgage, LJR claims that Debtor (and presumably every other owner of the Total Properties for which the lien has not been released) owes the balance of the Blanket Mortgage indebtedness.

As Debtor's contention is that the Properties were released from the Blanket Mortgage by Glazier, LJR subpoenaed a representative of Assurance Abstract Corporation who presented the results of his examination of the public real property records and his conclusion that there had been no release of lien with respect to the Properties. Exhibit C-8, C-9 and C-10 (search of the records of Philadelphia County for the period ending February 23, 2007 on the Properties)

To controvert this evidence, Mason testified to a meeting he and Debtor had with Glazier at some time in 1999 at which they were provided a document from which Mason concluded that in consideration for his assistance in identifying the other owners of the Total

---

[2] On the contrary, Debtor did conclude one such deal with LJR for a property not included in the Properties.

[3] From Glazier's records, O'Hara prepared a payment history which Debtor's counsel properly objected to as hearsay. Exhibit C-5. In any event, it does not reflect the amount presently due under the Note.

Properties, Glazier would release the Properties from the Blanket Mortgage.[4] Debtor sought to introduce the document given to him by Glazier, identified as D-5, to evidence that the Properties had been released by Glazier before the Assignment of Mortgage. LJR objected to the admission of that document as hearsay.[5] While the document was ultimately ruled inadmissible, Mason did testify that his steps to record it were unsuccessful and he sought a further document from Glazier which would cover the Properties individually. While he acknowledges not receiving such document with respect to Thompson Street and Myrtlewood Street, he claims to have received a document with respect to Baltz Street. Debtor testified that he was able to secure mortgage financing with respect to Baltz Street from Select Portfolio Servicing, Inc. which has filed a proof of claim in the amount of $31,600 with respect to that property.[6]

---

[4] According to Mason, shortly thereafter Glazier had a heart attack, and there does not appear to have been any further contact. While Glazier has since died, he apparently lived at least until April 2005 when he assigned the Blanket Mortgage to LJR.

[5] This contested matter was not subject to the pretrial procedures I employ in adversary proceedings so the evidentiary dispute was not identified until the course of the hearing. Accordingly, I briefly adjourned the hearing and directed Debtor's counsel to identify which documents it was seeking to admit. LJR was to thereafter interpose its objections, if any. Debtor was then required to file a memorandum of law with his legal support for the admission of the objectionable exhibits. LJR could respond if it so chose. The parties complied with this procedure, and I was able to address each evidentiary issue on the record of the hearing. I have memorialized my evidentiary rulings below.

[6] I take judicial notice of the existence of this proof of claim and the Debtor's Chapter 13 plan. Fed.R.Evid. 201. While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (citing Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also

Finally I note that Debtor has been in this Chapter 13 case since September 10, 2004. His Second Amended Chapter 13 plan dated August 3, 2005 was confirmed on September 8, 2005. Doc. No. 63. It makes no provision for LJR. Debtor has filed an adversary proceeding (the "Adversary") against LJR, Adv. No. 07-0023, which is currently pending. At the conclusion of the hearing and based on my bench finding that LJR has a valid lien on the Properties, Debtor offered to make monthly adequate protection payments of $200.[7]

**DISCUSSION**

**A.**

The evidence of record establishes that Glazier assigned all of his rights and interests in the Blanket Mortgage to LJR but those rights did not include liens on all the Total Properties notwithstanding the identification of the Total Properties in the Assignment. Rather Glazier had released certain of the Total Properties from the Blanket Mortgage, a fact that LJR verified when it found releases of record and a fact which probably influenced

---

In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).

Debtor's Chapter 13 plan seeks to cure the arrears on this mortgage, which the proof of claim asserts to be $14,958.00. Doc. No. 58. Debtor's Amended Schedule A dated May 25, 2005, Doc. No. 31, records a $35,000 value against a secured claim of $31,600. A further Schedule A dated August 3, 2005, Doc. No. 54, amends the amount of the secured claim to $46,771.47. The nature of the increase is unknown and is curious since Debtor's counsel asserts that unlike Thompson and Myrtlewood Streets, there is equity in the Baltz Street Property.

[7] When I asked LJR's counsel what monthly amount would LJR require, she advised me the full amount of the Note was due from Debtor pursuant to the Blanket Mortgage.

the purchase price of $14,500. However, there is no evidence that the Properties have been released from the Blanket Mortgage as assigned to LJR.[8] Even had that been Glazier's expressed intention, he never performed it.

Exhibit D-5 was offered by Debtor for the truth that Glazier had released the mortgage on the Properties. Debtor contended it was admissible under (1) Fed.R.Evid 802(d)(2) as an admission by LJR's assignor Glazier; (2) Fed.R.Evid. 803(15) as a statement which purports to effect a critical interest in property; (3) Fed.R.Evid. 804(a)(4) and (b)(3) as a statement against the declarant's pecuniary interest by a person unable to be present at the hearing because of death; and (4) Fed.R.Evid 807 as a document with substantial guaranties of trustworthiness. While I rejected each of these contentions on the record of the hearing, I will set forth again my reasons for so doing.

1. <u>Fed.R.Evid. 802(d)(2)</u>. When Debtor's counsel first invoked Rule 802 to move Exhibit D-5, a document prepared by Glazier, as an admission by LJR, I questioned his authority for contending that LJR as an assignee could be bound by the statements of its assignor and directed Debtor's counsel to provide his legal basis for so stating. He had none. While it is true as he states in his Memorandum that an assignee takes the rights of his assignor, no more and no less, this is a principle of substantive law, not one of evidence.

---

[8] Debtor and Mason claim the problem stems from the fact that multiple properties conveyed to different owners were recorded on one instrument. Mason testified that he could not record the release Glazier gave him because of the multiple property problem and was waiting for Glazier to break out the Properties when he had his heart attack. Debtor states that he was able to get a mortgage on Baltz Street which he claims was only possible because the Glazier mortgage was released. I find that there are other explanations for the new Baltz Street mortgage, such as error, that prevent me from considering it as probative evidence of the release of Glazier's mortgage. Although claiming that he received a separate release of lien for Baltz Street (as evidenced by the new mortgage), Debtor admits that he never received separate releases for the other two Properties.

Because LJR was in privity with Glazier does not render his statements admissions of LJR. Russell, Bankruptcy Evidence Manual § 801.16, at 1364 (2007 ed.).

2. <u>Fed.R.Evid. 803(13).</u> The use of this hearsay exception is limited by the requirement that dealings with the property since the statement "contained in a document purporting to establish an interest in property" not be inconsistent with the truth of the statement or the purport of the document. In September 2005 LJR gave notice to Debtor of its intention to exercise its rights as mortgagee on 2914 Thompson Street, Exhibit D-4, conduct which clearly is inconsistent with the purport of Exhibit D-5 which Debtor contends evidences the release of lien on that and the other Properties. Debtor's rejoinder that the LJR's inconsistent conduct does not count is simply not reflected in the Rule. Moreover, the purpose of the Rule which is to allow the admission of instruments executed in connection with serious and carefully planned transactions, the truth of which statements have been relied upon by third parties suggests the contrary conclusion. <u>See</u> <u>Compton v. Davis Oil Co.</u>, 607 F.Supp. 1221, 1229 (D. Wyo. 1985).

3. <u>Fed.R.Evid. 804(a)(4) and (b)(3).</u> This exception requires that the statement be against the deceased declarant's pecuniary interest. The testimony was that Glazier offered to release the lien in consideration for assistance in identifying the other owners of the Total Properties on which he had the Blanket Mortgage. I do not find that his pecuniary interest was adversely affected by Exhibit D-5.

4.  Fed.R.Evid. 807,[9] which is "to be used only rarely, and in exceptional circumstances" appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." U.S. v. Wright, 363 F.3d 237, 245 (3d Cir. 2004) (*citing* United States v. Bailey, 581 F.2d 341, 347 (3d Cir.1978)); Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 112 (3d Cir.2001)). For admissibility of evidence under this Rule: (1) the declarant must be unavailable; (2) the statement must have circumstantial guarantees of trustworthiness equivalent to the first four exceptions in Rule 804(b); (3) the statement must be offered as evidence of a material fact; (4) the statement must be more probative on the point for which it is offered than any other evidence that the proponent reasonably can procure; (5) introduction of the statement must serve the interests of justice and the purposes of the Federal Rules; and (6) the proponent of the evidence to be offered must have given his adversary the notice required by the rule. Bailey, 581 F.2d at 346.

I find that Exhibit D-5 does not possess the requisite circumstantial guarantees of trustworthiness required by the Rule. On its face, the document is not reliable since it

---

[9] Fed. R. Evid. 807 states in relevant part:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

is not dated.[10]  While the document purports to be signed by Glazier and notarized, LJR presented certification from the Office of the Secretary of the Commonwealth of Pennsylvania, Exhibit C-11, and the testimony of the custodian of records of the City of Philadelphia Records Department Reference Room that no person with the name affixed as notary on Exhibit D-5 was a licensed notary after 1983.  Since the notarization was performed in 1998 or 1999, the document could not have been validly notarized.  No other evidence was provided that would authenticate Glazier's signature.

For the foregoing reasons, I sustained the objection to the admission of Exhibit D-5.  However, the contest over the admission of Exhibit D-5 was really a tempest in a teapot since even had it been admitted, it would have only evidenced Glazier's intent to release the Properties from the Blanket Mortgage, not the implementation of the release.  LJR was entitled to rely on the public record which established that the Properties were included in the collateral of the Blanket Mortgage as no release of lien had been recorded.[11]  As noted by the Pennsylvania Supreme Court in Prouty v. Marshall, 225 Pa. 570, 74 A. 550 (1909);

> The object of the recording acts is to give notice to the world of that which is spread upon the record.  Therefore the record is constructive notice to all persons, without regard to the fact of actual notice.  Under our system, the record is open to every one who desires to ascertain the condition of the title to any piece of real estate, in so far as its ownership is concerned, or as to incumbrances thereon, and every one is bound to take notice of what the

---

[10] There is a typed reference to the year 1998 but no month and day.  It may have been prepared and signed in advance or the month and day overlooked.  Since Mason testified that the meeting with Glazier occurred in 1999, the former explanation is more likely.

[11] The procedure for release of a mortgage is governed by statute. 21 P.S. §721-3.  After the proscribed satisfaction piece is recorded, the recording officer is charged with the duty of indexing the required document against the name of the mortgagee or last assignee and indicating the recording of each satisfaction piece in the mortgage record.  Id.  These steps were not taken.

record shows, and searchers may rely upon the record as it stands. If this were not so, no one would be safe in purchasing real estate, or in loaning upon the strength of it, as security.

Id. at 573-74, 74 A. at 551. Accordingly, the Court held that the purchaser took free of the mortgage because he was entitled to rely upon the index which showed no mortgage. See also Miners Sav. Bank of Pittston, 326 Pa. 367, 192 A. 246 (1937) (unrecorded instrument void as to subsequent purchaser); Stock v. Catholic Press, 230 Pa. 127, 79 A. 414 (1911) (creditors and others presumed to have knowledge of recorded documents but are only bound by what the record contains). The public real estate records confirm LJR's position. The Blanket Mortgage is and always has been an encumbrance on the Properties.

**B.**

Section 362(d)(1) provides that the court shall grant relief from stay, "such as by terminating, annulling or conditioning the stay for cause, including the lack of adequate protection of an interest in property." Based on the record made at the hearings, I have concluded that LJR has a valid and perfected mortgage on the Properties which is entitled to be adequately protected in this bankruptcy proceeding. In the absence of adequate protection, relief from stay is warranted.

Generally, the decision whether to modify, condition, or annul the bankruptcy stay under Section 362(d) is within the discretion of the bankruptcy court. See Matter of Holtkamp, 669 F.2d 505 (7th Cir. 1982); In re Shariyf, 68 B.R. 604 (E.D. Pa. 1986); In re Colonial Center, Inc., 156 B.R. 452, 459 (Bankr. E.D. Pa. 1993). The determination is made by examining the totality of the circumstances. Matter of Baptist Medical Center of New York, Inc., 52 B.R. 417, 425 (E.D.N.Y. 1985), aff'd, 781 F.2d 973 (2d Cir. 1986);

Colonial Center, 156 B.R. at 459. Section 362(d) allows a creditor to attempt to strike a balance between its rights and the debtor's need for breathing room in order to rehabilitate or liquidate in an orderly manner. See generally Community Federal Savings and Loan Association v. Craghead (In re Craghead), 57 B.R. 366, 369 (W.D. Mo. 1985).

The party seeking relief from the stay has an initial burden to demonstrate cause for relief. In re Ward, 837 F.2d 124, 128 (3d Cir. 1988). This follows from the principle that a party seeking to alter the status quo has some initial burden to justify the relief sought. See generally In re Fries, 68 B.R. 676, 684-85 (Bankr. E.D. Pa. 1986). In re Kim, 71 B.R. 1011 (Bankr. C.D. Cal 1987), defined this initial burden as follows:

> Where, as here, relief from stay is grounded in cause, based upon lack of post-confirmation maintenance payments, the moving creditor must establish a prima facie case supporting the cause for relief from the stay. Such a prima facie case must include: (1) a showing of an obligation owing by the debtor to the creditor; (2) a valid security interest as to which relief from the stay is sought...; (3) the cause justifying relief from stay, such as post-petition or post-confirmation default.

Id. at 1016 (citation omitted).

LJR contends that because Debtor has admittedly made no payments to it on account of the Properties, cause exists to grant relief from stay. I agree that LJR has sustained its initial burden by such proof. However, the bankruptcy judge has discretion in granting § 362(d) relief to condition the stay as opposed to lifting it as LJR urges so that it may foreclose. Considering the totality of the circumstances in this case, I conclude that an appropriate balancing of the rights of the creditor LJR to have its interests in the Properties protected and the Debtor's to save one or more of the Properties through this Chapter 13

case is to condition the stay by requiring the Debtor to make monthly adequate protection payments to LJR pending the further proceedings identified below.

The Debtor has offered to pay $200 per month to LJR as an amount that is feasible under his current budget.[12] LJR's position that the only acceptable payment is the balance on the mortgage indebtedness does not advance matters for a number of reasons. First, it has not established in this hearing what LJR's payment obligation is. While the Note[13] that the Blanket Mortgage secures matured in June 2006, the only evidence of LJR making a demand was the letter offering to buy the Baltz Street Property or foreclose. I recognize that LJR asserts that it is entitled to collect the balance of the indebtedness at the maturity of the Blanket Mortgage as a matter of contract law. However, Debtor has sought protection under the Bankruptcy Code, and LJR's rights are subject to the protections afforded Debtor in bankruptcy. In that regard Debtor has filed the Adversary seeking to avoid LJR's lien under § 506 with respect to Thompson and Myrtlewood Streets.[14] Now that I have validated LJR's lien on Baltz Street, Debtor may be able to amend his Chapter 13 plan to treat LJR thereunder, paying the to be determined debt over the life of his plan.

Debtor offers to pay $200 per month to LJR as adequate protection pending the adjudication of the Adversary which seeks to value the Properties for the purposes of

---

[12] Given the judicial determination of LJR's lien rights, the Debtor will have to rethink its obligation to Select Portfolio which would appear to have a junior and undersecured position with respect to the Baltz Street Property. Title insurance may be available to Select Portfolio, freeing up additional funds for the Debtor to pay LJR.

[13] There is no evidence that the Note was assigned to LJR.

[14] Debtor avers that Myrtlewood Street and Thompson Street are encumbered by tax, water and sewer liens in excess of the values of those Properties.

Debtor's Chapter 13 plan. As the amount of LJR's debt was not established and no proof of claim has been filed, I am hard pressed to fix a better number. According to Debtor, Myrtlewood Street and Thompson Street are encumbered by tax, water and sewer liens in excess of their values, arguably requiring no payment to LJR to protect its interest in those properties. I also know that LJR has received payments aggregating $90,000 in the last two years for a position that cost it $14,500 so that while the Blanket Mortgage has matured, LJR has realized a significant profit on its investment and is not prejudiced by a short delay.

In short, I will grant the Motion but not lift the stay. Rather I will condition the continuation of the automatic stay on the payment by Debtor to LJR of adequate protection payments of $200 per month commencing within 10 days. I will allow the Debtor 15 days to file a motion to modify ("Modification Motion") his Chapter 13 plan to provide for LJR's secured interest in the Properties. I will schedule the Adversary and the Modification Motion for a consolidated trial forthwith. Parties are on notice to complete any necessary discovery, including securing appraisals as may be necessary, consistent with this notice.

An Order consistent with the foregoing shall be entered.

*Diane W. Sigmund*

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: April 2, 2007

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| TRACEY PATTERSON, | : | Bankruptcy No. 04-32201DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 2nd day of April 2007, upon consideration of the Motion of LJR Investments, LLC of Bucks County ("LJR") for Relief from the Automatic Stay (the "Motion"), after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **GRANTED in Part**. The automatic stay of § 362(a) shall remain in place with respect to 1241 Myrtlewood Street; 2914 W. Thompson Street; and 3029 Baltz Street, Philadelphia, PA pending further order of this Court so long as Debtor tenders monthly payments of $200 to LJR. Debtor shall file a motion to modify his confirmed Chapter 13 plan on or before **April 17, 2007**, consistent with the foregoing Memorandum Opinion.

*Diane W. Sigmund*

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge